RINALDO E. HENRY *v.* AARON B. MARVIN.

Where an agent sells goods without disclosing the name of his principal, the purchaser may pay the purchase money to the agent, or settle with such agent by any *bonâ fide* arrangement, whereby he parts with money or property upon the faith of the agent's apparent authority.

But placing the amount to the credit of the agent against a preëxisting indebtedness, with knowledge that the goods were held by the agent for sale for some other person, is not such a payment; and the principal—the owner—may recover therefor, notwithstanding such credit.

An agent to sell goods, has no authority to pledge them to secure an antecedent debt due by himself. And when the pledgee in such case refuses to deliver the goods to the owner on his demand, and sells them at auction, such owner may recover their value in an action for the illegal detention and conversion: or, he may affirm the sale, and, waiving the tort, sue for the proceeds of the goods as so much money received by the pledgee to his use.

Whether, when goods are tortiously taken or detained, the owner can—waiving the tort—sue for and recover their value, as goods sold and delivered by him to the wrongdoer? *Quere.*

THE complaint in this case alleged a delivery to the defendant, at his request, of goods, and a promise to pay their value, which was averred to have been $656; that the defendant refused either to pay for the goods, or to deliver them to the plaintiff, although the same were demanded ; wherefore judgment, etc. The answer simply traversed these allegations.

A reference was ordered, and resulted in a report for the defendant. The finding of the referees upon the facts, forming, as it does, the basis of the decision pronounced at general term, is inserted, with some immaterial curtailments, as follows :

" That between the months of August and November, 1848, the plaintiff was the owner of a quantity of stationery, consisting of gilt bordered and enamelled cards, india ink, pencils, and

other articles, originally worth from about $600 to $650, but being the remnant of a retailer's stock, partially damaged. That the goods were in charge of one John A. Park, as agent of the plaintiff, with full authority to sell and dispose of them. That while the goods were so situated, an interview was had between Park and one Abraham De Camp, in relation to a sale; that at this time De Camp was a clerk of the defendant, who was a dealer in stationery and fancy goods, having the general charge of the stationery department in the defendant's business, and though principally occupied as salesman, yet also authorized to buy, and occasionally purchasing goods in that line, though in smaller amounts, for his principal.

"That the 'result of the interview was, that De Camp told Park that he thought he could dispose of the goods for the benefit of all concerned; and having obtained permission of the defendant that they should be placed for the time in his lofts, the goods were soon after sent in boxes to the store of the defendant and deposited in the third story. That before the goods were so sent to the defendent's store, De Camp did not purchase them either for himself or the defendant. Before the goods were delivered, some memoranda of them seem to have been made by Park and by De Camp, which have not been preserved; but no regular bill was made out until some time after.

"That after they had remained in the lofts for some weeks, De Camp mentioned to the defendant that he had the goods to dispose of, and they by consent were brought down into the store and unpacked. At this time some conversation occurred between the defendant and De Camp relative to the sale of the goods, but nothing definite. De Camp told the defendant that if they were brought down he could sell defendant the goods at a very low price. Previous to this he had not said anything to the defendant about selling him the goods. When the goods were brought down they were overhauled by De Camp, who made an invoice of them. Some changes were made in the packages, wrappers, etc., and the goods were then placed by themselves in the store, not mingled with the other goods, but kept carefully distinct from them, a considerable portion of

them out of sight on shelves under the desk of the book-keeper.

"That while thus situated a portion were sold to the customers of the defendant with his knowledge and consent, being taken when wanted, to fill orders, and when the defendant had not other similar articles; and in all such cases, they were included with other goods sold at the same time, and forming part of the same bills, the defendant receiving the price as for other goods. There was an understanding between the defendant and De Camp that a fair valuation should be given for the goods so sold, but no definite price was fixed. Whenever any of them were so sold they were entered by De Camp in a book kept by himself, but belonging to the defendant, called the order book; the goods being entered in this book by themselves and distinct from all others. The amount of the goods so sold before De Camp left the defendant's employ was $80, and all the remainder were left in the defendant's store when De Camp left.

"That De Camp left the employ of the defendant about the latter part of February, 1849, and as he was about to leave gave the invoice which he had made of the said goods to Park, agent of the plaintiff, who gave it to the plaintiff, and they together finished carrying out the prices in pencil which De Camp had only commenced. The bill or invoice was thereafter retained by the plaintiff till presented on this trial.

"That about the first of October, 1848, the defendant loaned De Camp his note for $150, and about the time the note was to mature, De Camp told the defendant that he need not be uneasy, as he, the said defendant, held these goods as his security. About the 1st of January, 1849, the goods which had been sold were, by agreement between the defendant and De Camp, credited to De Camp on the books of the defendant at a price agreed upon between them.

"That when De Camp left, the defendant had paid the $150 note and held the goods which remained, as his security; and in July, 1849, having sent notice to De Camp of his intention, he sold the whole remainder at auction, and carried the pro-

ceeds, being the sum of $97, to the credit of De Camp. That the defendant kept an invoice book, in which all goods purchased were entered. These goods were not entered in this book.

" That after De Camp had left the defendant's employ, Park demanded payment for the goods of the defendant, which was refused. That shortly before this action was brought, a demand was made by the plaintiff upon the defendant for the payment of the value of the goods, and for the goods themselves, both of which demands were refused."

Judgment was entered upon the report in favor of the defendant, for costs of suit. The plaintiff appealed.

*Benjamin D. Silliman*, for the plaintiff.

*John E. Burrill, Jr.*, for the defendant.

BY THE COURT. WOODRUFF, J.—In this case the court are of opinion that the facts found by the referee do not warrant the report for the defendant.

When an agent for another sells his principal's goods, the purchaser may pay the purchase money to the agent, or settle with the agent by any *bonâ fide* arrangement by which he parts with money or property upon the faith of the agent's apparent authority in the matter. But placing the amount to the credit of the agent, against a preëxisting indebtedness, is not such a payment, and the principal (the owner of the goods) may recover therefor, notwithstanding such credit, and although at the time of the sale the purchaser was not informed of the name of the principal; and this is especially true where the purchaser was aware that the goods were held by the vendor as agent for sale. In this view the defendant, Marvin, is to be regarded as having purchased the goods which were disposed of at his store; and the mere fact that, on the 1st of January, 1849, he placed the $80 which he agreed upon with De Camp as the price, to the credit of the latter, does not protect him against the plaintiff's claim.

While the residue of the goods remained in Marvin's hands,

the plaintiff disclosed his ownership and demanded the goods. The defendant already knew that De Camp only held them for sale. De Camp had no authority to pledge these goods for an antecedent debt, and the defendant had no right to sell the goods at auction against the plaintiff's will, and in the face of his demand that they be given up to him, and he is in this view liable therefor.

He would, we think, be clearly liable for the proceeds of the sale, as money had and received for the plaintiff's use, the plaintiff waiving the tort and suing for the money; and he would have been liable for the value of the goods, had the plaintiff thought proper to sue for the conversion.

Whether in such case a plaintiff may waive the tort and sue as for goods sold and delivered, is by no means clear. The authorities in this State, as well as in England, and other States of the United States, are divided. (See *Samine* v. *Donell*, 2 Ld. Raym. 1216 ; Chit. Pl. 94, 103 ; *Linden* v. *Hooper*, Cowp. 419 ; *Parker* v. *Norton*, 6 T. R. 699 ; *Abbotts* v. *Barry*, 2 Brod. and Bing. 369 ; *Butts* v. *Collins*, 13 Wend. 156, 157 ; *Putnam* v. *Wise*, 1 Hill, 240 and note ; *Berly* v. *Taylor*, 5 Hill, 583 and note, p. 584 ; *McKnight* v. *Dunlop*, 4 Barb. S. C. R. 42, and cases there referred to.)

The plaintiff would, we think, do well to amend his complaint so as not needlessly to embarrass his case with this question before proceeding to a new trial.

Upon the facts now reported the judgment must be set aside, a new trial ordered, and the case referred back ; the testimony already taken to stand, except so far as either party may desire to obviate exceptions, if any, and each party to be at liberty to give further evidence. . Costs to abide event of suit.

Ordered accordingly.